IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-32-D

| | | |
|---|---|---|
| ANGELO FORDHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GREENVILLE POLICE OFFICER | ) | |
| JOHN DOE, and THE CITY OF | ) | |
| GREENVILLE, | ) | |
| | ) | |
| Defendants. | ) | |

On February 25, 2011, Angelo Fordham, Jr. ("Fordham" or "plaintiff") filed this action pursuant to 42 U.S.C. sections 1983 and 1988, the Fourth and Fourteenth Amendments, and North Carolina law. Compl. ¶ 1 [D.E. 1]. Fordham names the city of Greenville, North Carolina (hereinafter "Greenville" or "city") and Greenville police officer John Doe (hereinafter "Doe" or defendant")[1] as defendants. Id. ¶¶ 1–2. On March 23, 2011, defendants filed a motion to dismiss pursuant to Rules 12(b)(2) & (4)–(6) of the Federal Rules of Civil Procedure. Defs.' Mot. Dism. [D.E. 6]. On April 22, 2011, Fordham responded in opposition to defendants' motion. Pl.'s Mem. Opp'n Mot. Dism. [D.E. 12]. On April 27, 2011, defendants replied. Defs.' Reply [D.E. 13]. As explained below, Fordham has failed to state a claim upon which relief can be granted; therefore, defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted.

---

[1]Fordham alleges that an African-American male Greenville police officer used excessive force against him via a taser gun ("taser"), and that because he was "face down and had soiled himself" immediately after being tased, he does not know the name of the officer. Pl.'s Mem. Opp'n. Mot. Dism. 3. Therefore, he has brought this action against the unnamed officer, with the expectation that he will learn the identity of the defendant during discovery. Id. Upon learning this information, he intends to amend his complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure to change the name of the officer-defendant. Id.

I.

On February 26, 2009, Fordham and his friend, Monte Corey, were in Fordham's residence in Greenville, North Carolina when members of the Greenville Police Department and Pitt County Sheriff's Office Joint Drug Task Force (hereinafter "Task Force") knocked on his door. Compl. ¶¶ 6–9. Doe, an officer with the Greenville Police Department, was a Task Force member. Id. ¶¶ 4–7. The Task Force was there to execute a search warrant. Id.

When Fordham heard the knock, Fordham told Corey to open the door. Id. ¶ 9. Corey complied, but upon seeing that there were numerous law enforcement officers seeking to enter, Corey immediately shut the door. Id. Corey then leaned on the door to prevent the officers' entrance. Id. The Task Force officers used force to open the door. Id.

When the Task Force officers entered the home, Fordham was "approximately 10 to 15 feet from the door." Id. ¶ 10. He states that the officers entered his home shouting conflicting instructions. Some officers ordered him to "put his hands up" and others directed him to "get on the ground." Id. Fordham claims that he raised his hands and continued to stand near the door as the Task Force officers entered. Id. Fordham then alleges that Doe used his taser on Fordham. Id. The taser burned a hole in Fordham's shirt, and caused him to lose control of his bodily functions, soil himself, and fall to the floor. Id. ¶ 11. Fordham alleges that Doe later told him that he had used the taser because Fordham had not put his hands up. Id. ¶ 12. Fordham states that during the altercation, he was not intoxicated, disorderly, or "a threat to himself or others." Id. ¶ 18.

Fordham alleges that Doe used excessive force in violation of his Fourth Amendment right to be free from unreasonable seizure and committed an assault and battery. Id. ¶¶ 21–26; see also Pl.'s Mem. Opp'n Mot. Dism. 4–8. As for the city, Fordham seeks to recover from the city under section 1983 and contends that the city, "by and through its police department, developed and

2

maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Greenville . . . ." Compl. ¶¶ 27–33. Fordham refers to the city's policies of failing to properly investigate citizen complaints of excessive force, failing to take corrective actions after internal investigations of excessive force allegations, and failing to adequately train officers on properly using tasers. Id. ¶¶ 15–17, 29–30, 33; see also Pl.'s Mem. Opp'n Mot. Dism. 5–6.

The city and Doe seek dismissal. See Defs.' Mem. Supp. Mot. Dism [D.E. 7]. First, they contend that the complaint against the city must be dismissed pursuant to Rules 12(b)(4) & (5) because Fordham failed to properly serve the city. Id. 2–4. Next, defendants argue that the court does not have personal jurisdiction over defendant Doe because Doe was not served, and therefore seek dismissal pursuant to Rules 12(b)(2) & (5). Id. 4–5. Finally, defendants seek to dismiss all claims against the city and Doe under Rule 12(b)(6) and argue that Fordham has not alleged facts to support the city's municipal liability under section 1983 or Doe's personal liability under federal or state law. Id. 5–12.

## II.

### A.

Rule 4 of the Federal Rules of Civil Procedure describe the requirement of effective service and process. See Fed. R. Civ. P. 4(a)–(c). Within 120 days of filing a complaint, a plaintiff must serve all defendants with process, unless service is waived or plaintiff demonstrates good cause for the delay. Fed. R. Civ. P. 4(d) & (m). Process consists of a summons and a copy of the complaint. See Fed. R. Civ. P. 4(c).

Rule 4(j)(2) sets forth the specific requirements for service of all "state-created governmental organization[s]," including cities. See Fed. R. Civ. P. 4(j)(2). It provides that a state governmental entity may be served by either "delivering a copy of the summons and of the complaint to its chief

executive officer; or . . . serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Id. Therefore, the court looks to North Carolina law to determine if Fordham properly served the city. See, e.g., Patterson v. Whitlock, 392 F. App'x 185, 188 n.7 (4th Cir. 2010) (per curiam) (unpublished).

Under North Carolina law, a plaintiff may serve a "city, town, or village . . . by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to its mayor, city manager or clerk . . . ." N.C. Gen. Stat. Ann. § 1A-4(j)(5)(a). North Carolina strictly enforces this rule "to insure that a defendant receives actual notice of a claim against him," and does not provide for any exceptions to personal service, other than the specific procedure set forth in the statute. See, e.g., Crabtree v. City of Durham, 136 N.C. App. 816, 817, 526 S.E.2d 503, 505 (2000); Johnson v. City of Raleigh, 98 N.C. App. 147, 149, 389 S.E.2d 849, 851 (1990).

Here, Fordham mailed a copy of the complaint and summons to the office of Greenville's city manager, return receipt requested. See Pl.'s Mem. Opp'n Mot. Dism. 2–3. The process arrived at the city manager's post office box on March 4, 2011, seven days after Fordham filed the complaint. See Aff. Serv. Proc. on City [D.E. 10] 2. On April 21, 2011, Fordham filed his affidavit of service pursuant to Rule 4(l) of the Federal Rules of Civil Procedure, and it shows that the process was addressed to "City Manager Wayne Bowers," but that Gordon Clark actually accepted delivery. Id. 1–2. Clark is a city buildings and grounds employee. See Defs.' Mem. Supp. Mot. Dism., Att. 3 ("Clark Aff.") ¶ 3.

The city seeks dismissal on two grounds. First, it seeks to dismiss the case pursuant to Rule 12(b)(4), alleging that "no summons has been issued." See Defs.' Mem. Supp. Mot. Dism. 2. However, the city presents no evidence to support this claim, and Fordham has demonstrated that a summons was issued against the city on February 28, 2011. See Summons [D.E. 5]; Aff. Serv.

4

Proc. on City. Therefore, the court denies the Rule 12(b)(4) motion.

As for the city's Rule 12(b)(5) motion, the city alleges that Fordham's method of service failed to comply with Rule 4(j)(2) of the Federal Rules of Civil Procedure and applicable North Carolina law. See Defs.' Mem. Supp. Mot. Dism. 3–4. In support, defendants contend that Fordham's service was deficient because the city manager did not physically receive it. See id. 3–4.

When a defendant seeks dismissal under Rule 12(b)(5), plaintiff bears the burden of establishing that process complies with Rule 4. See, e.g., Tate v. Mail Contractors of Am., Inc., No. 3:10-CV-528, 2011 WL 1380016, at *2 (W.D.N.C. Apr. 12, 2011) (unpublished); Harty v. Commercial Net Lease LP Ltd., No. 5:09-CV-495-D, 2011 WL 807522, at *2 (E.D.N.C. Mar. 1, 2011) (unpublished). Fordham has met that burden. See Aff. Serv. Proc. on City. As for the city's argument that the city manager had to physically receive the mail, the argument lacks merit under North Carolina law. See, e.g., Steffey v. Mazza Constr. Grp., Inc., 113 N.C. App. 538, 539–41, 439 S.E.2d 241, 242–43 (1994); In re Annexation Ordinance, 62 N.C. App. 588, 592, 303 S.E.2d 380, 382 (1983). Thus, the court denies the city's motion to dismiss under Rule 12(b)(5).

B.

As for Doe, he seeks to dismiss the claims pursuant to Rule 12(b)(2) for want of personal jurisdiction and pursuant to Rule 12(b)(5) for deficient service. See Defs.' Mem. Supp. Mot. Dism. 4. When a court's personal jurisdiction over a defendant is challenged under Rule 12(b)(2), "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). Failure to properly serve a defendant prevents a court from obtaining personal jurisdiction over the defendant and entitles the defendant to dismissal under Rule 12(b)(2). See, e.g., Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); see also Thomas v. Green Point Mortg.

5

Funding, No. 5:10-CV-365-D, 2011 WL 2457835, at *1 (E.D.N.C. June 16, 2011) (unpublished). Additionally, as stated, plaintiff must establish that service was adequate when a defendant seeks dismissal pursuant to Rule 12(b)(5). See, e.g., Harty, No. 5:09-CV-495-D, 2011 WL 807522, at *2. Therefore, dismissal is appropriate under both Rules 12(b)(2) and 12(b)(5) if the court determines that plaintiff failed to properly serve Doe. See, e.g., Mayberry v. United States, No. 5:11-CV-165, 2011 WL 3104666, at *2 (E.D.N.C. July 23, 2011) (unpublished); Taylor-Perkins v. Tyler, No. 2:10-CV-59-BO, 2011 WL 1705558, at *1 (E.D.N.C. May 4, 2011) (unpublished).

Defendants claim that the summons failed to actually name the police officer who attacked Fordham and that Fordham improperly served Doe by sending him process through certified mail addressed to the Greenville Police Department Chief of Police. See Defs.' Mem. Supp. Mot. Dism. 4. However, plaintiff's naming John Doe as defendant does not make service per se improper. John Doe suits are permissible "against real, but unidentified defendants." Chidi Njoku v. Unknown Special Unit Staff, No. 99-7644, 2000 WL 903896, at *1 (4th Cir. July 7, 2000) (per curiam) (unpublished table decision) (quoting Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982)). A court should dismiss a John Doe suit without prejudice when it does not appear that the plaintiff will be able to identify the true identity of the defendant "'through discovery or through intervention by the court.'" Id. (quoting Schiff, 691 F.2d at 198). Moreover, even when there is a reasonable likelihood of uncovering the defendant's identity, when filing the complaint, a plaintiff must still "provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992) (quotation omitted); Williams v. Burgess, No. 3:09-CV-115, 2010 WL 1957105, at *2 (E.D. Va. May 13, 2010) (unpublished), aff'd, 2011 WL 3664279 (4th Cir. Aug. 22, 2011) (per curiam) (unpublished). Furthermore, the complaint must provide each Doe defendant with fair notice of the specific facts

6

upon which individual liability rests. See Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007); Williams, 2010 WL 1957105, at *3.

Assuming the facts alleged in the complaint to be true, Doe is a "real, but unidentified" Greenville police officer who used a taser against Fordham on February 26, 2009. Fordham further narrowed Doe's possible identity to an African-American male officer on the Task Force who helped execute a search warrant at Fordham's residence on February 26, 2009. Although defendants argue that Fordham's failure to identify Doe in the two years between the alleged conduct and when Fordham filed the complaint supports dismissal, defendants have presented no authority to suggest that such pre-filing failure supports dismissal. Cf. HMK Corp. v. Walsey, 637 F. Supp. 710, 714 n.4 (E.D. Va. 1986) (failure to identify a Doe defendant after discovery warrants dismissal). However, it appears that the proper means of serving an unidentified defendant under North Carolina law is by publication. See N.C. Gen. Stat. Ann. § 1-166; N.C. Gen. Stat. Ann. § 1A-4(j1); cf. Wayne Cnty. ex rel. Williams v. Whitley, 72 N.C. App. 155, 160, 323 S.E.2d 458, 462–63 (1984). Nonetheless, because Fordham has failed to state a claim against Doe upon which relief can be granted, the court need not and does not determine whether Fordham's service of Doe comports with North Carolina law.

III.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S. Ct. 3059 (2011); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007)

7

(per curiam). Although a court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiff's] favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), a court need not accept a complaint's legal conclusions drawn from the facts. Iqbal, 129 S. Ct. at 1949–50. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

A.

First, defendants move to dismiss plaintiff's section 1983 claim against the city. See Defs.' Mem. Supp. Mot. Dism. 6–9. Assuming without deciding that Fordham did suffer a deprivation of his constitutional rights, the city is only liable for injuries stemming from that deprivation under section 1983 "if it causes such a deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978)). Cities are not liable under section 1983 based on a respondeat superior theory. Iqbal, 129 S. Ct. at 1948–49; Monell, 436 U.S. at 691. In Carter, the Fourth Circuit identified four possible sources of "official policy or custom" giving rise to municipal liability: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the citizens;" or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Carter, 164 F.3d at 218 (quotations and citations omitted). Fordham focuses on the third and fourth grounds.

When municipal liability is premised on omissions in training law enforcement officers, a plaintiff must show that the municipal officials were at least deliberately indifferent to the constitutional rights of the citizenry in their failure to train. Id.; Spell v. McDaniel, 824 F.2d 1380,

8

1390 (4th Cir. 1987). Allegations of mere negligence are insufficient to state a claim. Spell, 824 F.2d at 1390; Smith v. Atkins, 777 F. Supp. 2d 955, 967 (E.D.N.C. 2011).

When municipal liability is premised on a practice constituting a custom or usage with the force of law, (1) the custom or usage must be causally connected to the specific violation alleged; (2) the custom or usage must have been constructively or actually known of by the municipal policymakers before the alleged violation; and (3) "there must [have been] a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 210 (4th Cir. 2002) (quotations omitted); see Buffington v. Baltimore County, Md., 913 F.2d 113, 122 (4th Cir, 1990); Spell, 824 F.2d at 1390. Mere negligence is not enough. Buffington, 913 F.2d at 122. Moreover, constructive knowledge "may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duties of responsible policymakers to be informed, or combinations of these." Randall, 302 F.3d at 210 (quotations omitted). The causal connection must be close, with the "specific deficiency . . . such as to make the specific violation almost bound to happen, sooner or later . . . ." Spell, 824 F.2d at 1390 (quotations omitted); see Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407–09 (1997) (holding that plaintiff must establish that municipal action was taken with deliberate indifference to its known or obvious consequences); City of Canton v. Harris, 489 U.S. 378, 390–91 (1989); Buffington, 913 F.2d at 122; Smith, 777 F. Supp. 2d at 967.

Here, Fordham asserts municipal liability on the third ground, alleging a failure to train officers regarding proper taser use amounting to deliberate indifference. See Compl. ¶¶ 27–33; Pl.'s Mem. Opp'n Mot. Dism. 5–6. However, Fordham has not presented any facts to support his claim that the city failed to properly train its officers regarding the use of tasers. Rather, his assertion is

merely a "threadbare recital[] of [the] cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Moreover, Fordham has presented no facts indicating that the alleged failure to train resulted from city policymakers' deliberate indifference to citizens' constitutional rights. See, e.g., Brown, 520 U.S. at 407–09; Harris, 489 U.S. at 391; Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Semple v. City of Moundsville, 195 F.3d 708, 713–14 (4th Cir. 1993); Spell, 824 F.2d at 1390. Therefore, Fordham fails to state a claim.

Fordham also claims that Greenville police officers' practice of improperly using tasers is so persistent and widespread, and so permanent, as to amount to a custom or usage with the force of law. In support, Fordham alleges that the city "inadequately and improperly investigate[d] citizen complaints of police misconduct . . . ." Compl. ¶ 29. Fordham also alleges that in the past year, Greenville police officers used tasers on 31 documented occasions, and that the city had "sustained [21] complaints [of excessive taser use] against Greenville [p]olice [o]fficers." Id.; Pl.'s Mem. Opp'n Mot. Dism. 5.[2] Fordham then states that the city rarely takes corrective action against officers found to use excessive force against citizens and fails to inform aggrieved citizens of such corrective actions when they are taken. Compl. ¶ 30. Finally, Fordham claims that this frequency of excessive force, coupled with the infrequency of corrective responses from the city demonstrates that city policymakers were deliberately indifferent to the constitutional rights of the citizenry, that this indifference caused officers to believe that excessive force would go unpunished, and that this

---

[2]Defendants note that Fordham does not allege in the complaint that the 21 sustained complaints were related to taser use. See Defs.' Mem. Supp. Mot. Dism. 8; Compl. ¶ 29. However, in its brief opposing defendants' motion to dismiss, Fordham explains that at a January 13, 2011 meeting of the Greenville City Council, the police chief "confirmed that twenty-one . . . complaints of taser use had been 'sustained.'" Pls.' Mem. Opp'n Mot. Dism. 2. This elaboration comports with the facts alleged in the complaint, and the court accepts it as true for purposes of defendants' motion to dismiss. See, e.g., Help at Home, Inc. v. Med. Capital, LLC, 260 F.3d 748, 752–53 (7th Cir. 2001); see also Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001).

belief among officers, including Doe, caused his injuries. Id. ¶¶ 31–32.

Taking all of Fordham's allegations as true, they fail to amount to "a practice . . . so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law. Carter, 164 F.3d at 218 (quotations omitted). Assuming without deciding that the 21 sustained complaints imparted constructive notice on city policymakers of improper taser use, Fordham has failed to show that knowledge of these 21 sustained complaints gives rise to a "specific intent or deliberate indifference . . . to correct or terminate" the officers' improper behavior. See, e.g., Randall, 302 F.3d at 210 (quotations omitted). Although Fordham claims that the city did not respond to these complaints, he provides no factual basis for this assertion. Compl. ¶ 30. Rather, he merely asserts that the city, as a matter of policy, fails to inform complaining citizens of corrective action taken against officers found to have used their tasers improperly. However, the failure to inform citizens of corrective action does not necessarily suggest that such corrective action was not taken or suggest that any improper taser use equates to an excessive use of force. In short, Fordham has failed to plausibly allege that the city policymakers failed to respond to complaints of excessive force arising from improper taser use, much less that any failure met the scienter standard required by Randall and Carter. Without providing plausible allegations that support deliberate indifference on the part of the city policymakers, Fordham cannot show that any indifference caused his injuries. See, e.g., Randall, 302 F.3d at 210; Carter, 164 F.3d at 218; cf. Iqbal, 129 S. Ct. at 1950; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Therefore, Fordham fails to state a claim for municipal liability, and the court dismisses his section 1983 claim against the city.

B.

As for Fordham's claims against Doe, defendants assert that Doe is entitled to qualified immunity from Fordham's section 1983 claim. See Defs.' Mem. Supp. Mot. Dism. 11. The

11

Case 4:11-cv-00032-D   Document 19   Filed 10/20/11   Page 11 of 17

doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis removed); see Pearson, 555 U.S. at 231.

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 555 U.S. at 232; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir.), cert. denied, 131 S. Ct. 392 (2010); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). First, "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotations omitted). Courts have discretion to decide which of the two prongs should be addressed first. Id. at 236. Thus, defendants are entitled to qualified immunity if the answer to either question is "no." See, e.g., Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011); Brockington, 637 F.3d at 506.

As for the "clearly established right" prong,

> the right the official is alleged to have violated . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier v. Katz, 533 U.S. 194, 202 (2001) (quotations and citations omitted), overruled on other grounds by Pearson, 555 U.S. at 227; see, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009). In Wilson v. Layne, 141 F.3d 111 (4th Cir. 1998) (en banc), aff'd, 526 U.S. 603 (1999), the Fourth Circuit held that for a plaintiff to prevail over the defense of qualified immunity, the right at issue must have been "authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." 141 F.3d at 114 (quotation omitted). When the Supreme Court affirmed the Fourth Circuit's decision in Layne, it observed that plaintiffs had not brought to the Court's attention any cases "of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." 526 U.S. at 617. In Al-Kidd, the Supreme Court stated:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every "reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

131 S. Ct. at 2083 (citations and quotations omitted).

Fordham alleges that Doe used excessive force in violation of the Fourth Amendment. The Fourth Amendment protects citizens from a state actor's excessive force. See, e.g., Graham v. Connor, 490 U.S. 386, 394–95 (1989); Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009);

13

Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004); Bostic, 667 F. Supp. 2d at 613. To determine whether an officer used excessive force, the court employs a "reasonableness" test. See, e.g., Graham, 490 U.S. at 396; Valladares, 552 F.3d at 388. The court looks to the objective reasonableness of the officer's actions, not the officer's subjective motivations. See, e.g., Graham, 490 U.S. at 397; Young, 355 F.3d at 758–59.

The reasonableness test under the Fourth Amendment is not "capable of precise definition." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Rather, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Young, 355 F.3d at 757 (quotations omitted). In particular, the court must give "careful attention to the facts and circumstances of each particular case . . . ." Graham, 490 U.S. at 396; see also Muehler v. Mena, 544 U.S. 93, 98–99 (2005) ("An officer's authority to detain incident to a search is categorical . . . ."); Michigan v. Summers, 452 U.S. 692, 705 (1981); Noel v. Arston, 641 F.3d 580, 589 (4th Cir. 2011). Furthermore, the court may consider the extent of the plaintiff's injury. See Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). In evaluating the facts and circumstances "the court must not engage in Monday-morning quarterbacking, but instead should consider that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Bostic, 667 F. Supp. 2d at 613 (quoting Park v. Shiflett, 250 F.3d 843, 853 (4th Cir. 2001)); see also Graham, 490 U.S. at 396–97.

Here, Doe's actions in executing the search warrant were reasonable. Fordham claims that Doe used the taser on him "while he was peaceably standing in his residence, committing no crime, and was threatening harm to no person." Pl.'s Mem. Opp'n Mot. Dism. 7. However, Fordham's complaint shows that the situation was not so tranquil. Doe and the Task Force were entering an

14

unfamiliar residence to execute a search warrant concerning narcotics. The officers encountered active resistance from Corey when Corey discovered that law enforcement officers were seeking entrance. Upon entering the residence, the officers found two adult males close to the door. Thus, Doe reasonably believed that he was entering a hostile environment when he entered the residence and was reasonably prepared to address any threat that the occupants of the home might pose to officer safety. Moreover, Fordham concedes that, in Doe's presence, at least one of the officers instructed him to get on the ground and that he failed to comply. See Compl. ¶ 10. Doe then used his taser one time on Fordham after Fordham refused to comply with the other officer's instructions. Under the totality of the circumstances, Doe's taser use was reasonable. See, e.g., Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) ("Although being struck by a taser gun is an unpleasant experience . . . a single use of the taser gun causing a one-time shocking[] was reasonably proportionate to the need for force and did not inflict any serious injury."); Hinton v. City of Elwood, 997 F.2d 774, 781 (10th Cir. 1993).

Alternatively, a reasonable officer could have believed on February 26, 2009, that using the taser one time in these circumstances was permissible under the Fourth Amendment. See, e.g., Orem v. Rephann, 523 F.3d 442, 448 (4th Cir. 2008); see also Al-Kidd, 131 S. Ct. at 2083; Saucier, 533 U.S. at 202; Graham, 490 U.S. at 397; Mattos v. Agarano, No. 08-15567, 2011 WL 4908374, at *12, 16 (9th Cir. Oct. 17, 2011) (en banc); Maciariello, 973 F.2d at 298 ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Stated differently, existing Supreme Court and Fourth Circuit precedent on February 26, 2009, did not place the "constitutional question beyond debate." Al-Kidd, 131 S. Ct. at 2083. Thus, qualified immunity applies.

15

In sum, Fordham has failed to show that Doe violated the Fourth Amendment, or, in the alternative, that Doe violated a Fourth Amendment right that was clearly established. Accordingly, the court dismisses Fordham's section 1983 claim against Doe.

C.

Having disposed of Fordham's federal claims, the court must decide whether to address his remaining state law claims. See, e.g., McLenagan v. Karnes, 27 F.3d 1002, 1008–09 (4th Cir. 1994). When the remaining state law claims "have been briefed by both parties and are patently without merit, the balance between judicial efficiency and comity is struck in favor of the federal court's disposition of the state claims." Id. (quotations omitted).

Fordham claims that Doe is liable for the state law torts of assault and battery. Compl. ¶¶ 24–26. In response, Doe asserts immunity under North Carolina law, and this court looks to North Carolina law to determine whether such immunity applies. See, e.g., Gray-Hopkins v. Prince George's Cnty., Md., 309 F.3d 224, 231 (4th Cir. 2002) ("We must look to substantive state law . . . in determining the nature and scope of a claimed immunity.").

Under North Carolina law, "a public official engaged in the performance of governmental duties involving the exercise of judgment and discretion may not be held liable unless it is alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties." Showalter v. North Carolina Dep't of Crime Control & Pub. Safety, 183 N.C. App. 132, 136, 643 S.E.2d 649, 652 (2007). A public official sued individually generally is not liable for "mere negligence." Hare v. Butler, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236 (1990), 327 N.C. 634, 399 S.E.2d 121 (1990) (quotations omitted); see also Epps v. Duke Univ., Inc., 122 N.C. App. 198, 206, 468 S.E.2d 846, 852 (1996) (holding that the "mere negligence" standard of Hare was intended "only as a truncated, or 'shorthand' version of the official immunity

16

doctrine"). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Wanton conduct is that which "is done of wicked purpose, or . . . needlessly, manifesting a reckless indifference to the rights of others." Id., 321 S.E.2d at 890 (quotations omitted). In the context of a law enforcement officer sued for allegedly using excessive force, the officer "has the right to use such force as he may reasonably believe necessary in the proper discharge of his duties . . . ." Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 596–97, 599 S.E.2d 422, 430 (2004) (quotations omitted).

In his complaint, Fordham does not plausibly allege that Doe acted maliciously, corruptly, or outside the scope of his duty. Moreover, the complaint shows that Doe reasonably believed that tasing Fordham was necessary in discharging his duties. Therefore, North Carolina's public official immunity bars Fordham's assault and battery claims against defendant Doe and those claims are dismissed.

IV.

Plaintiff has failed to state a claim upon which relief can be granted against the city or Doe. Thus, the court GRANTS defendants' motion to dismiss [D.E. 6].

SO ORDERED. This 20 day of October 2011.

JAMES C. DEVER III
Chief United States District Judge